TIMOTHY RYAN *et al.*, Indiv. and as Next Friends of Nicholas Hoban, a Minor, Plaintiffs and Counterdefendants, v. ROBERT E. YARBROUGH *et al.*, Defendants and Counterplaintiffs and Third-Party Plaintiffs-Appellants (Patricia Ryan, Third-Party Defendant-Appellee).

Second District  No. 2—03—1333

Opinion filed February 4, 2005.

O'MALLEY, P.J., concurring in part and dissenting in part.

Paul L. Stephanides, Assistant City Attorney, of Naperville, for appellants.

Stephen A. Rehfeldt, of Mulherin, Rehfeldt & Varchetto, P.C., of Wheaton, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The City of Naperville and its employee, Robert E. Yarbrough (collectively, the City), appeal from the dismissal with prejudice of their third-party contribution complaint against Patricia Ryan. Patricia Ryan's grandson, Nicholas Ryan, was injured in an accident involving a City truck driven by Yarbrough, and Nicholas's parents sued defendants on Nicholas's behalf. The City filed contribution complaints against Nicholas's parents and grandmother, Patricia, who was babysitting Nicholas at the time of the accident. On appeal, the City argues that the trial court erred in dismissing the amended contribution

complaint, because the amended complaint sufficiently alleged that Patricia negligently supervised Nicholas when she gave Nicholas permission to skateboard in the street, in violation of certain City ordinances. We agree with the City and reverse the dismissal of the amended complaint.

On August 9, 2000, Nicholas, who was then six years old, was riding a skateboard on a residential street in Naperville when he and a Naperville truck driven by Yarbrough collided, causing Nicholas injuries. Nicholas's parents, Timothy Ryan and Shannon Hoban-Ryan, sued the City on Nicholas's behalf, alleging that Yarbrough was acting within the scope of his City employment at the time of the accident and that he caused the accident by driving carelessly. The City filed a counterclaim for contribution against Nicholas's parents, and, once they learned that Patricia was caring for Nicholas at the time of the accident, they filed a third-party complaint for contribution against her as well. The original complaint was dismissed and the City filed an amended complaint.

The City's amended complaint alleged that, just before the accident, Patricia gave Nicholas permission to skateboard on the street. The City stated that skateboarding on the street violated two City ordinances and that Nicholas's specific actions while skateboarding violated several traffic laws. The City alleged that Patricia had a duty "to exercise ordinary caution and care for the safety of the minor Plaintiff, Nicholas Hoban, and to supervise him so that he did not violate any laws." Patricia moved to dismiss the complaint under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)), contending that the City failed to plead a claim for negligent supervision by failing to allege that Patricia had the requisite degree of control over Nicholas as required by section 316 of the Restatement (Second) of Torts. Restatement (Second) of Torts § 316 (1965). The City responded that Patricia did have the opportunity to prevent Nicholas from violating the ordinances banning skateboarding in streets, because she specifically gave him permission to skateboard in the street. The court dismissed the complaint with prejudice, ruling that "the cases are very clear in that there must be that [sic] immediate vicinity where there can be control in regard to those acts of negligence *** of that minor child." The City now appeals, contending that it sufficiently pleaded Patricia's negligence when it alleged that she gave Nicholas permission to skateboard in the street and that skateboarding in the street is a violation of City ordinances.

■ A trial court should grant a motion to dismiss a complaint under section 2—615 of the Code only when the allegations in the complaint, construed in the light most favorable to the plaintiff, fail to

state a cause of action upon which relief can be granted. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 147 (2002). The court must accept as true all well-pleaded facts and inferences drawn from those facts. *Oliveira*, 201 Ill. 2d at 147. The complaint is to be construed liberally and should be dismissed only when it appears that the plaintiff could not recover under any set of facts. *Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 323 (1999). We review *de novo* a dismissal under section 2—615. *Oliveira*, 201 Ill. 2d at 147-48.

■ The Joint Tortfeasor Contribution Act (Contribution Act or Act) provides, in pertinent portion:

> "(a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a) (West 2000).

A well-pleaded contribution claim must allege that the third-party defendant is liable in tort to the injured party. 740 ILCS 100/2 (West 2000); *Government Employees Insurance Co. v. Buford*, 338 Ill. App. 3d 448, 456 (2003). Here, the City alleges that Patricia is liable in the tort of negligence to Nicholas. To state a cause of action for negligence, a complaint must allege facts that establish a duty, breach of that duty, and proximate causation. See *Hough v. Kalousek*, 279 Ill. App. 3d 855, 860 (1996).

■ The amended complaint in this case alleges facts that establish that Patricia owed a duty to Nicholas. A caretaker of a child has a duty to protect the child from harm. *Parks v. Kownacki*, 305 Ill. App. 3d 449, 461 (1999). The complaint alleges that Nicholas "was under the care and supervision of Patricia." This allegation establishes that Patricia owed Nicholas a duty to protect and supervise Nicholas. See *Allstate Insurance Co. v. Mathis*, 302 Ill. App. 3d 1027, 1030 (1999).

The amended complaint also alleges facts sufficient to establish that Patricia breached her to duty to supervise and protect Nicholas. The amended complaint alleges that "[i]mmediately prior to the occurrence, Nicholas Hoban asked Patricia Ryan's permission to skateboard on public streets." The complaint also alleges that it is unlawful to skateboard on Naperville streets and that Patricia had seen Nicholas fall off his skateboard "two or three times in the past." When viewed in a light most favorable to the City, these facts sufficiently establish that Patricia acted unreasonably when she gave Nicholas permission to ride his skateboard in the street. Further, the complaint alleges that Nicholas was injured by a truck when he skateboarded near an intersection. This is sufficient to establish that Patricia's alleged negligence was a proximate cause of Nicholas' injury. Ac-

cordingly, the trial court erred by dismissing the City's amended complaint for failure to state a cause of action.

Citing the Restatement (Second) of Torts, section 316, Patricia argues that she owed no duty to Nicholas because "parents are not liable for the torts of their children." This argument fails to recognize that the complaint alleges that Patricia, and not Nicholas, committed a tort. Thus, contrary to Patricia's contention, the City does not have to establish an exception to the rule enunciated by section 316, because it does not apply to this case. The cases cited by Patricia are not applicable to this case for the same reason section 316 is not applicable. The cases cited by Patricia discuss whether a parent had a duty to protect a third person from his or her child's negligence. Here, the complaint alleges that Patricia was negligent in supervising Nicholas and that her negligence was a proximate cause of Nicholas' injuries.

We feel constrained to respond to the issue of waiver; an issue not raised by the parties but by the dissent. The fact that the City cited section 316 in its argument in its appellate brief does not constitute waiver of any other valid argument that its complaint sufficiently stated a cause of action outside of the parameters of section 316. The City did not cite section 316 as a basis for its contribution claim in its complaint. Patricia first raised section 316 in her motion to dismiss. The City discussed section 316 only as a response to Patricia's motion. Rather than pointing out that section 316 of the Restatement was a red herring, the City erroneously argued that section 316 supported its cause of action in contribution. The City's failure to correctly explain that section 316 does not apply does not constitute a waiver of all other valid arguments. It constitutes a nonmeritorious argument.

When reviewing a trial court's order dismissing a complaint, we are charged with reviewing the complaint *de novo* to determine whether the plaintiff's allegations state a cause of action. *Oliveira*, 201 Ill. 2d at 147-48. The term *"de novo"* means that the court reviews the matter anew—the same as if the case had not been heard before and as if no decision had been rendered previously. *Tatara v. Peterson Diving Service*, 283 Ill. App. 3d 1031, 1037 (1996). Thus, when we review the matter *de novo*, we are not constrained to make the same mistake the trial court made when it based its decision on an argument that lacked merit. Not every possible argument is waived when one argument lacks merit. An argument of an otherwise properly preserved issue on appeal is waived when it fails to comply with Supreme Court Rule 341 (134 Ill. 2d R. 341) or another supreme court rule. In this case, the City's arguments regarding section 316 did not violate Supreme Court Rule 341 or any other rule. The City's attempt to reconcile section 316 with its complaint does not constitute waiver

of all other valid arguments; rather, the section 316 argument merely lacks merit. Nevertheless, excluding the argument regarding section 316, the City sufficiently argued in its brief, and stated in its complaint, a cause of action in contribution against Patricia. Therefore, the judgment of dismissal with prejudice was reversible error.

We feel constrained to make some comment regarding the dissent. We find it baffling that the dissent fails to comprehend the following sentence contained in the City's first brief: "In the case at bar, the Third-Party Defendant could also step in and stop Nick from causing harm to himself by not granting permission to Nick to skateboard on the City's streets." This statement, in conjunction with the City's claim that Patricia violated a city ordinance prohibiting such activity by intentionally allowing Nicholas to skateboard in the street, stated a cause of action in contribution independent of section 316.

We are also baffled by the dissent's statement that we have "conjured" a "novel duty in tort law." 355 Ill. App. 3d at 350. We have conjured nothing. We have restated a long-held principle of tort law that a grandparent has a duty to protect his or her grandchild from harm. See *Gulledge v. Gulledge*, 51 Ill. App. 3d 972, 973 (1977) (the court answered in the affirmative the question of whether grandparents having temporary care and custody of a minor grandchild are liable to the minor for injuries sustained by the minor as a result of the grandparents' ordinary negligence). The dissent's desire to erase this truism and hold that a caretaker has no duty to her charge would eviscerate a basic tenet of tort law. It would appear the dissent confuses the immunity created for parents and other persons *"in loco parentis."* However, this immunity does not abrogate the duty but merely immunizes the party from suit. Curiously, the dissent fails to acknowledge that a grandparent is normally not deemed a person *"in loco parentis."* See *Cates v. Cates*, 156 Ill. 2d 76, 93 (1993) (the court enunciated another exception to the immunity created by *"in loco parentis"* that allows children to sue grandparents).

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded for further proceedings.

HUTCHINSON, J., concurs.

PRESIDING JUSTICE O'MALLEY, concurring in part and dissenting in part:

The parties completely missed the issue by arguing, not whether Patricia breached a duty to Nicholas, but rather that, under section

316 of the Restatement (Second) of Torts, she breached a duty to third parties to prevent Nicholas from harming them. While the City will appreciate what the majority has done for it, the City will be as surprised as Patricia to find that the majority has ruled that a child can sue his grandmother for allowing him to go skateboarding. They will both be surprised because neither party has even mentioned, let alone developed an argument, regarding whether a child may sue his grandmother under these circumstances. Finally, this ruling will arouse interest from both sides of the debate regarding tort reform, especially in light of the fact that it comes about without so much as a request from the party that benefits from it.

A reviewing court should set aside the principles of waiver only for good reason: "to provide a just result [or] to maintain a sound and uniform body of precedent." *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002). In exercising the court's power to override considerations of waiver, "[proper] care should be taken that the litigants are not deprived of an opportunity to present argument." *Hux v. Raben*, 38 Ill. 2d 223, 225 (1967) (holding that, in the situation presented there, the appellate court did not err by considering arguments not raised by the parties).

The majority contends that no waiver has occurred. However, neither the majority nor I can point to any discussion in the briefs of the duty of a person in charge of a child *to that child*—the foundation of any contribution claim against Patricia. The City has based its arguments entirely on the assumption that section 316 of the Restatement (Second) of Torts provides the relevant duty of care. The majority states that, because our standard of review is *de novo*, we are not constrained by the erroneous basis of the trial court's ruling. 355 Ill. App. 3d at 346. The majority confuses two different applications of the doctrine of waiver. An argument is waived where it is brought on appeal but the trial court record is not sufficiently developed on the issue *or* where the record is sufficiently developed on the issue but the parties do not bring the argument on appeal. That "the court reviews the matter anew" (355 Ill. App. 3d at 346) does not mean that waiver no longer applies. This court has not hesitated to invoke waiver when conducting *de novo* review. See, *e.g.*, *Salte v. YMCA of Metropolitan Chicago Foundation*, 351 Ill. App. 3d 524, 530 (2004); *Waitcus v. Village of Gilberts*, 199 Ill. App. 3d 102, 105 (1990). By not invoking waiver here, the majority has cut off Patricia's opportunity to argue the points of law on which it decided the case. This is risky even where the law is well developed and clear. It is particularly inadvisable when, as discussed below, the court must expand the law to decide the matter.

Another of the majority's justifications for completely disregarding principles of waiver and then deciding an issue that it raised *sua sponte* is that "[t]he City's failure to correctly explain that section 316 does not apply does not constitute a waiver of all other valid arguments." 355 Ill. App. 3d at 346. It is true, as the majority says, that making a nonmeritorious argument does not waive other arguments. 355 Ill. App. 3d at 346. But *failing to make* those arguments does waive them. See 188 Ill. 2d R. 341(e)(7) ("[p]oints not argued are waived"). The City did, as the majority states, fail to correctly explain why section 316 does not apply. However, it also failed to explain why any other duty should apply. Neither party even *mentioned* another possible duty to apply. The majority's statement, that the City sufficiently argued a cause of action against Patricia, is patently incorrect. I cannot imagine a more straightforward and obvious application of the doctrine of waiver.

The majority arrives at its discussion of Patricia's duty to Nicholas by saying that, "excluding the argument regarding section 316," the City still made a sufficient argument on Patricia's duty to Nicholas. 355 Ill. App. 3d at 347. However, excluding the argument regarding section 316, the City made no argument whatsoever.

The majority claims to be "baffled" that I am unable to comprehend the meaning of the following sentence from the City's brief: " 'In the case at bar, the Third-Party Defendant could also step in and stop Nick from causing harm to himself by not granting permission to Nick to skateboard on the City's streets.' " See 355 Ill. App. 3d at 347. I find the meaning quite readily comprehensible when that sentence is read in its context, which is:

> "The case of *Lott v. Strang*, [312 Ill. App. 3d 521 (2000),] relied upon by the Third-Party Defendant in the trial court, actually supports the Third-Party Plaintiffs' position. In *Lott*, the appellate court relied upon the following illustration from *section 316 of the Restatement (Second) of Torts*:
>
>> 'A is informed that his six-year-old child is shooting at a target in the street with a .22 rifle, in a manner which endangers the safety of those using the street. A fails to take the rifle away from the child, or to take any other action. The child unintentionally shoots B, a pedestrian, in the leg. A is subject to liability to B.'
>
> *Restatement (Second) of Torts* § 316, at 124 (1965). The court found that in the above quoted scenario, the parent can step in and stop the child from causing harm. In the case at bar, the Third-Party Defendant could also step in and stop Nick from causing harm to himself by not granting permission to Nick to skateboard on the City's streets." (Emphasis in original.)

Thus, it is readily apparent that the sentence quoted by the majority is in no way an argument "exclusive" of section 316. On the contrary, it is part of the only argument made by the City, *i.e.*, its section 316 argument. As the quote shows, the City even emphasized its reference to section 316. What I cannot comprehend is what the majority seeks to accomplish by its misleading, out-of-context quote. As noted above, the parties will be quite aware upon reading this decision that they both missed the issue. The City will no doubt appreciate what the majority has done, but I doubt that the City will be so delusional as to think that it really did it by itself.

After tossing aside the doctrine of waiver to raise a new issue for the parties, the majority then moves on to its next self-appointed task: creating a novel duty in tort law without the benefit of argument from either side. The majority's rush to decide the relevant standard of care was notably precipitous given the uncertain state of the law in the area. Illinois lacks case law on the issue of a child care provider's duty to prevent the child from engaging in risky activities.

The majority cites *Gulledge*, 51 Ill. App. 3d 972, in characterizing the duty it conjures as a "long-held principle of tort law." 355 Ill. App. 3d at 347. In *Gulledge*, the plaintiff child suffered an injury when he fell under a riding lawnmower being operated by his 13-year-old sister while both were visiting their grandparents' residence. *Gulledge*, 51 Ill. App. 3d at 973. The child sued his grandparents for ordinary negligence, and the grandparents moved to dismiss the case based on the doctrines of parental immunity and *in loco parentis*. *Gulledge*, 51 Ill. App. 3d at 973. The trial court granted the motion, and the appellate court granted the child's application for interlocutory appeal in order to determine whether the grandparents enjoyed parental immunity. *Gulledge*, 51 Ill. App. 3d at 973-74. *Gulledge* does not deal with the duty of a child care provider to prevent a child from engaging in risky activities; it instead deals solely with the question, not relevant here, of whether grandparents/caretakers enjoy parental immunity.

The majority states that "[a] caretaker of a child has a duty to protect the child from harm." 355 Ill. App. 3d at 345. That is surely true as far as it goes, but it does not get at any of the troubling issues lurking here. To unearth its standard of care, the majority had to turn to *Parks*, a case holding that a parish had a duty to protect a parishioner against a sexually abusive priest. *Parks*, 305 Ill. App. 3d at 452. The *Parks* court did not attempt to lay out all of the facets of the duty of care, but simply stated that the "duty to protect from harm certainly encompasses a duty to refrain from harming and to restrain others within one's control from harming." *Parks*, 305 Ill. App. 3d at 461. It did not need to address the more difficult problem of the extent

of the duty to prevent a child from engaging in activities that might be found to be unreasonably risky.

Clearly, the duty is something other than simply to do everything reasonably possible to keep the child from harm. A child care provider can conveniently eliminate most risks of active play by sitting a child in front of a television set, but no one will claim that that is good child care. A standard of care that overemphasizes a duty to keep a child from harm will encourage such overly risk-averse behavior. By suggesting that the duty to protect from harm is unqualified by any competing concerns of encouraging the child's healthy development, the majority has created exactly that kind of incentive.

Although the majority's sweeping disregard of the doctrine of waiver troubles me, I believe that the interests of justice required us to take a measured step beyond the City's argument to correct the trial court's obvious error in granting Patricia's motion to dismiss. "The purpose of requiring that defects in pleadings be attacked by motion [citation] is to point out the defects in the pleadings so that the complainant will have an opportunity to cure them before trial." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 422 (1981); see also *People ex rel. Pope County v. Shetler*, 318 Ill. App. 279, 285 (1943) ("a motion which fails to allege facts pointing out specifically the defects complained of *** is insufficient"). Thus, a trial court should not grant a motion to dismiss unless the motion correctly points out a critical defect in the complaint.

Patricia's motion clearly failed to do this. As the majority observes, the heart of any viable contribution claim by the City must be the allegation of facts showing that Patricia is liable *to Nicholas* for his injuries. Patricia cited authorities concerning only the duty owed by a person caring for a child to supervise that child *for the benefit of third parties*. Her motion to dismiss thus failed to attack the sufficiency of the complaint *as a claim for contribution*. The City missed the flaw in Patricia's argument—indeed, the City bought into her reasoning so completely that its appellate briefs are pervaded by it. Nevertheless, the error was clear-cut, so we would not wander into uncharted legal territory if we recognized the error and vacated the dismissal. To do that would require only a measured relaxation of the rules of waiver, rather than the wholesale abandonment indulged in by the majority.

It may be that the complaint sufficiently alleged that Patricia breached even a properly formulated standard of care. However, the parties should have had a chance to aid the court in developing the law in an area so laden with policy implications. Had we vacated the dismissal without finding that the complaint stated a cause of action, the parties could have done just that on remand.

One more thing I am unable to comprehend is how the majority can describe the preceding sentences as "[t]he dissent's desire to \*\*\* hold that a caretaker has no duty to her charge [and thus] eviscerate a basic tenet of tort law." 355 Ill. App. 3d at 347. Even a cursory reading of my dissent reveals that I express no desire to hold that a caretaker has no duty to her charge. I do not assert that an argument for such a duty cannot be made; I am merely saying that the majority should not make the argument for the City, thus precluding any responsive argument, and that we should not even address the issue until it is properly before us.

Although I concur that the trial court erred in granting Patricia's motion to dismiss, I must dissent from the majority's decision to hold that the City stated a cause of action. I would have vacated the dismissal and ordered the trial court to deny the motion to dismiss without prejudice, thus allowing the parties to properly frame the issue for the trial court and for us.