JAMES L. O'NEILL, Plaintiff-Appellant, v. MATT RODRIGUEZ, Superintendent of Police, City of Chicago, *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—97—0611

Opinion filed August 7, 1998.

Sklodowski, Franklin, Puchalski & Reimer, of Chicago (Richard J. Reimer, of counsel), for appellant.

Mara S. Georges, Acting Corporation Counsel, of Chicago (Carole Silver, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE ZWICK delivered the opinion of the court:

Defendant, the Police Board of the City of Chicago (Police Board or Board) issued a final administrative decision suspending plaintiff, James L. O'Neill, for a period of 30 days based upon violations of certain departmental rules. Plaintiff filed a complaint for administra-

tive review in the circuit court of Cook County. The circuit court affirmed the decision of the Police Board, and plaintiff has appealed, contending (1) the decision of the Police Board did not contain sufficient findings of fact to allow judicial review, (2) the Police Board's decision was against the manifest weight of the evidence, (3) the Police Board abused its discretion and acted arbitrarily in issuing the 30-day suspension, and (4) the investigation of plaintiff's conduct was improperly initiated because it was predicated on an anonymous complaint.

The record establishes that, from 1991 until 1993, plaintiff was a lieutenant for the police department of the City of Chicago and served as the commanding officer of the personnel investigative section of the personnel division. In that capacity, plaintiff was responsible for command of the unit that processed candidates, including oversight of all preemployment testing and background investigations. In addition to his supervisory duties, plaintiff also personally conducted some background investigations and performed follow-up on other investigations. Plaintiff was a 20-year veteran with an exemplary service record.

The instant case centers on charges that plaintiff violated Rules 2 and 13 of the Chicago police department, which prohibit the following behavior:

Rule 2: "Any action or conduct which impedes the Department's efforts to achieve its policy and/or goals and/or brings discredit upon the Department."

Rule 13: "Failure to adequately secure and care for Department property."

On June 10, 1992, an anonymous telephone complaint alleged that plaintiff had submitted false overtime slips to the Department when, in fact, he was teaching at DePaul University and frequenting a Halsted Street tavern. A second anonymous complaint, this one in writing, was received on July 27, 1992, and charged that plaintiff was an "habitual drunk driver" and had been involved in a traffic accident on June 1, 1992, after he had been drinking.

These two complaints became the subject of an internal affairs investigation, which revealed that at 1:45 a.m. on June 1, 1992, plaintiff was driving a department vehicle westbound on I-90 west of Harlem Avenue. According to plaintiff, as he moved from the center lane to the right lane of traffic, an unknown vehicle changed lanes directly in front of him and caused him to swerve to the left in order to avoid an accident. As a result, plaintiff's vehicle traveled across the center and left lanes and struck a concrete median barrier. The accident caused damage to the department vehicle driven by plaintiff which was estimated at more than $12,980. At the time of the ac-

cident, the weather was clear and dry, and plaintiff was not asked to take a breathalyzer test. The Illinois state trooper who investigated the accident noticed that plaintiff was nervous but did not observe evidence that plaintiff had been drinking. Chicago police sergeant James McKenna, who drove plaintiff to the police station, back to the accident scene and then home, agreed with the state trooper's assessment that plaintiff had not been drinking. Plaintiff's superior, Commander Wedgbury, concluded that the accident was "non-preventable."

Plaintiff explained that he was off duty at the time of the accident and was on his way home after having dinner at the home of Gilberto Elizondo, another member of the police department. Although his shift ended at 2 p.m. that day, plaintiff returned to work to review materials. Plaintiff left the office between 7:30 p.m. and 8 p.m. that evening and then went to the home of Elizondo. Plaintiff denied that he had been drinking alcohol at Dugan's Tavern prior to the accident, and he stated that he had permission to use the department vehicle because he would be using the vehicle to conduct interviews later that day. Plaintiff claimed that he does not drive his assigned department vehicle for personal use.

Gilberto Elizondo stated that plaintiff had dinner at his home on the evening of May 31, 1992. According to Elizondo, plaintiff arrived at his home after 7 p.m., and he stayed until well after midnight. Elizondo stated that plaintiff did not consume any alcoholic beverages at his home that night.

The investigation also revealed that plaintiff had been involved in an automobile accident 15 months earlier while he was off duty. This accident occurred at 12:55 a.m. on March 16, 1991, while plaintiff was traveling northbound on Kedzie Avenue at the intersection with Bryn Mawr. Plaintiff's car was in the intersection when it stalled because of mechanical problems. A second vehicle, traveling eastbound, entered the intersection when the light changed and struck plaintiff's vehicle. Commander Wedgbury also found that this accident was "non-preventable." The cost of repair to plaintiff's vehicle was approximately $1,753.

The police officer who was first to the scene described plaintiff as "disoriented from the collision," but stated that there was no indication that he was intoxicated. A police captain who was called to the scene interviewed plaintiff and noted "no impairments." However, the driver and passenger of the second car involved in the collision stated that plaintiff appeared to be intoxicated after the accident. The driver, David Flapan, explained that he had not informed the investigating officer of his belief that plaintiff was intoxicated because "it was obvious by the way he was acting. He couldn't even drive his car off the street." The passenger, Teddy Wallace, characterized plaintiff as "really, really

drunk *** extremely bombed *** totally inebriated on liquor." He also described plaintiff as stumbling and suffering from slurred speech, and Wallace stated that plaintiff had shouted obscenities at Flapan and him. Wallace further stated that he had told one of the officers at the scene that plaintiff was intoxicated.

Plaintiff explained that although he was off duty at the time of the accident, he was on his way to the 20th District station to pick up computer equipment that was stored in his locker. Plaintiff stated that he intended to transport the equipment from the 20th District station to his office at 11th and State Street. However, plaintiff was north of the 20th District station and was traveling north at the time of the accident.

The investigation of plaintiff's actions also included surveillance conducted on August 5, 1992, which revealed that shortly after 7 p.m., plaintiff drove a department vehicle to the area of Dugan's Tavern at 128 South Halsted Street in Chicago. Plaintiff entered the tavern, where the investigating officer observed him consume three alcoholic drinks. Sergeant Henry Barsch was called to the tavern at approximately 9:15 p.m., and plaintiff admitted to Barsch that he had been drinking. The two then agreed that plaintiff should not drive the department vehicle home from the bar.

Plaintiff explained that he had worked from 11 a.m. until 7 p.m. on that day and that he had permission to take the department vehicle home that evening. Plaintiff stated that he stopped at Dugan's Tavern on his way home because he wanted to speak with one of the managers of the bar about tickets to a ball game. Plaintiff did not recall consuming any alcohol while in the bar, but he remembered drinking several nonalcoholic beverages.

Pursuant to this investigation, plaintiff was served on August 26, 1992, with charges that he had "driven a department vehicle beyond the scope of his employment and after frequenting a tavern," that he had engaged in secondary employment, and that he had submitted false time records. Based upon these charges, the internal affairs division conducted an investigation that resulted in certain findings with regard to each of the allegations and a recommendation that plaintiff be suspended for 30 days. On August 3, 1994, the superintendent issued an order that plaintiff be suspended for 30 days based upon the determination that plaintiff had violated Chicago police department Rule 2 (three counts) and Rule 13 (two counts).

Thereafter, plaintiff requested a hearing before the complaint review panel, which consisted of three departmental members. Upon review of the internal affairs investigation, the review panel concurred with the finding that plaintiff had violated department rules. However,

two of the three members recommended a suspension of shorter duration. Thereafter, the superintendent notified plaintiff that he would be suspended for 30 days. Plaintiff exercised his right to appeal the superintendent's decision to the Police Board. On December 20, 1994, the Police Board issued its final administrative decision, sustaining the 30-day suspension of plaintiff.

Upon plaintiff's complaint for administrative review, the circuit court of Cook County remanded the matter to the Police Board, requiring the Board to make "sufficient and appropriate" findings in support of its decision.

On September 30, 1996, the Police Board issued a three-page "Order After Remand," which sustained its prior decision suspending plaintiff for a period of 30 days. Thereafter, the circuit court considered plaintiff's complaint for administrative review and affirmed the decision of the Police Board. Plaintiff now appeals the ruling of the circuit court.

We initially consider plaintiff's claim that the decision of the Police Board did not contain sufficient findings of fact to allow judicial review.

The record reveals that upon remand from the circuit court, the Police Board entered an "Order After Remand,"[1] which stated as follows:

"3. There is sufficient evidence to support the Superintendent's allegation that Lieutenant O'Neill violated Rule 2, *inter alia*, by using Department vehicles for activities outside of the scope of his employment duties, and while doing so, being involved in traffic accidents on March 16, 1991, and June 1, 1992. He also used a Department vehicle for activities outside the scope of his employment duties on August 5, 1992 to drive to Dugan's, a tavern located at 128 South Halsted, Chicago, Illinois, where he consumed alcoholic beverages.

4. There is sufficient evidence to support the Superintendent's allegation that Lieutenant O'Neill violated Rule 13 by being involved in traffic accidents on March 16, 1991 and June 1, 1992 while using Department vehicles for activities outside the scope of his employment duties."

■ It is well established that the purpose of an agency's findings in

---

[1]We note that the Police Board's "Order After Remand" indicated that no findings should be required for suspensions of less than 30 days. However, this statement was wholly irrelevant to the case at bar because plaintiff was suspended for 30 days and not for a lesser period. In addition, the Board's position is not consistent with the rule requiring findings that are sufficient to allow judicial review.

an administrative proceeding is to permit orderly and efficient judicial review. *Telcser v. Holzman*, 31 Ill. 2d 332, 338, 201 N.E.2d 370 (1964); *Jim M'Lady Olds, Inc. v. Secretary of State*, 162 Ill. App. 3d 959, 963-64, 516 N.E.2d 346 (1987). Where such findings are sufficient to permit the reviewing court to make an intelligent decision, the standard is met. *Jim M'Lady Olds, Inc.*, 162 Ill. App. 3d at 964; *Bodine v. Civil Service Comm'n*, 134 Ill. App. 3d 341, 344, 480 N.E.2d 160 (1985). Where the testimony before the administrative agency is preserved for review in the record, specific findings of fact by the agency are not necessary for judicial review. *Mahonie v. Edgar*, 131 Ill. App. 3d 175, 178, 476 N.E.2d 474 (1985).

■ The evidence regarding plaintiff's violations of Rule 2 and Rule 13 is preserved in the record for review by the court, and the above findings, which were specifically included in the Board's "Order After Remand," were sufficient to permit orderly and efficient judicial review. Therefore, we find that reversal of the circuit court's decision is not warranted on this basis.

We next address plaintiff's assertion that the Police Board's decision was against the manifest weight of the evidence.

■ In order to determine whether findings and conclusions of an administrative agency are against the manifest weight of the evidence, the court must conclude that all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous and that the opposite conclusion is clearly evident. *Jagielnik v. Board of Trustees of the Police Pension Fund*, 271 Ill. App. 3d 869, 875, 649 N.E.2d 527 (1995). The fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently based upon the same evidence will not justify a reversal of the findings of an administrative agency. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 89, 606 N.E.2d 1111 (1992); *Antonelli v. Board of Trustees of the Hillside Police Pension Board*, 287 Ill. App. 3d 348, 353, 678 N.E.2d 773 (1997). Determinations as to the weight of evidence and the credibility of witnesses are uniquely within the province of the agency (*Hahn v. Police Pension Fund*, 138 Ill. App. 3d 206, 209, 485 N.E.2d 871 (1985)), and a court will not substitute its judgment for that of the agency on such matters (*Abrahamson*, 153 Ill. 2d at 89). Where the findings of the agency are supported by competent evidence in the record, its decision should be affirmed. *Commonwealth Edison Co. v. Property Tax Appeal Board*, 102 Ill. 2d 443, 467, 468 N.E.2d 948 (1984).

■ There is competent evidence in the record to support the findings of the Police Board in the instant case. The surveillance report

that documented plaintiff's conduct on August 5, 1992, established that plaintiff drove a department vehicle to a tavern where he remained for over two hours and consumed several alcoholic drinks. In addition, competent evidence was presented to establish that plaintiff had on more than one occasion used a department vehicle for personal use between 10 p.m. and 2 a.m. Plaintiff's authorized use of departmental vehicles beyond normal duty hours did not extend to social or leisure activities of this type. Rather, the evidence indicated that he was authorized to use department vehicles only to conduct background investigations on candidates, to transport materials and equipment to support processing of candidates, or to administer necessary examinations to incumbent officers. Based upon the record before us, we hold that the decision of the Police Board was not against the manifest weight of the evidence.

Plaintiff also contends that the Police Board abused its discretion and acted arbitrarily in issuing the 30-day suspension.

■ A reviewing court will not interfere with an agency's decision to impose sanctions unless the agency acted unreasonably or arbitrarily or chose a sanction which is unrelated to the purpose of the statute. *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n*, 85 Ill. 2d 547, 552, 426 N.E.2d 885 (1981); *Ballin Drugs, Inc. v. Department of Registration & Education*, 166 Ill. App. 3d 520, 531, 519 N.E.2d 1151 (1988). The determination of the appropriate sanction is one to be made by the administrative agency and not the courts. *Momney v. Edgar*, 207 Ill. App. 3d 26, 29, 565 N.E.2d 246 (1990). A court of review should defer to the administrative agency's expertise and experience in determining the appropriate sanction to protect the public interest. *Abrahamson*, 153 Ill. 2d at 99.

■ We find that the 30-day suspension imposed upon plaintiff was well within the discretion of the Police Board and was not unreasonable, arbitrary, or unrelated to the purpose of the statute. It was justified by the fact that, on at least three occasions, plaintiff used department vehicles for personal use beyond normal duty hours without authorization. Plaintiff's violation of department rules undermines the police department and its ability to enforce the law. In addition, a 30-day suspension was an appropriate sanction to protect the public interest. Consequently, the penalty imposed by the Police Board is affirmed.

■ Finally, we consider plaintiff's claim that the investigation of his conduct was improperly initiated because it was predicated on an anonymous complaint. In support of this claim, plaintiff relies upon section 2—84—330(D) of the Municipal Code of the City of Chicago, which provides that "[n]o anonymous complaint made against an of-

ficer shall be made the subject of a complaint register investigation *unless the allegation is of a criminal nature.*" (Emphasis added). Chicago Municipal Code § 2—84—330(D) (1990).

We find that the investigation of plaintiff's conduct did not violate the above ordinance. The initiation of the investigation was proper where both of the anonymous complaints included allegations of criminal conduct (theft by deception for falsification of time records and violation of the Illinois Vehicle Code for driving while under the influence of alcohol). The initiation of the investigation complied with the requirements of section 2—84—330(D), and the ordinance does not preclude investigation of other behavior once an inquiry has commenced. In this case, it was appropriate for the department to open a complaint register based upon the allegations contained in the anonymous complaints against plaintiff, and the results of that investigation revealed that plaintiff had violated certain departmental rules. The Police Board acted within its authority to impose an appropriate sanction for plaintiff's violations of those rules.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and QUINN, J., concur.